UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JONATHAN H. LEVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1007 (GK) |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 12(b)6, Defendant moves for dismissal of Plaintiff's claims against the United States Postal Service for failure to state a claim upon which relief can be granted. Alternatively, Defendant moves pursuant to Fed.R.Civ.P.56, for summary judgment as there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. In accordance with the requirements of Local Rule 7.1, a Memorandum of Points and Authorities, a Statement of Genuine issues of Material Fact not in Dispute, the Declaration of Betty White, Information Disclosure Specialist, in the FOIA Unit at the Office of Counsel for the Postal Inspection Service, with Exhibits A-X, a Vaughn Index (Exhibit Y), and a proposed Order granting the relief sought are attached hereto.

Plaintiff should take notice that any factual assertions contained in the affidavit and other attachments in support of Defendant's motion will be accepted as true by the Court unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in Defendant's submissions. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992). Indeed, Fed.R.Civ.P.56(e) provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,


JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JONATHAN H. LEVY,            )
                                 )
        **Plaintiff,**         )
                                 )
     **v.**                   )       **Civil Action No. 06-1007 (GK)**
                                 )
UNITED STATES POSTAL SERVICE,  )
                                 )
        **Defendant.**      )
                                 )

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Defendant, United States Postal Service, respectfully submits this statement of material facts as to which there are no genuine disputes in accordance with Local Rule 7.1(h). The declaration of Betty L. White, ("White Decl."), Information Disclosure Specialist, United States Postal Inspection Service, ("USPIS") supports this statement.

    1.     By letter dated March 10, 2005, Mr. Jonathan Levy[1] made a FOIA request for copies of all documents and information concerning anthrax hoax letters sent to the Los Gatos, CA and Campbell, CA police departments and a private residence in San Jose, CA in May 2003. White Decl. at ¶4; Exhibit A, attached thereto.

    2.     By letter dated March 21, 2005, receipt of Plaintiff's request was acknowledged and he was informed that his request was assigned FOIA No. 2005-FIS-00091. White Decl. at ¶5; Exhibit B, attached thereto.

---

[1] The named plaintiff in this case is Jonathan Levy. Mr. Levy's FOIA request sought records related to his "long time client", Mr. Phillip J. Kronzer, and Kronzer's alleged involvement with anthrax hoax letters. See Complaint, ¶2. In an effort to maintain consistency throughout defendant's motion, the term "Plaintiff" will be used collectively when referencing Mr. Levy or Mr. Kronzer, unless further identification is required.

3.       By electronic message forwarded on March 17, 2005, a record search was performed by USPIS of its internal database ISIIS to locate any potentially responsive records. As a result of this search, it was determined that there was an open case (Case No. 0884-1379523-DMI(1) in the San Francisco Division assigned to Inspector Richard Hall. White Decl. at ¶6.

4.       By letter dated March 30, 2005, a response was sent to Plaintiff advising him that Case number 0884-1379523-DMI(1) was in an open status and that he should contact OCI again in 60-90 days to determine whether Case number 0884-1379523-DMI(1) had been closed. White Decl. at ¶7; Exhibit C attached thereto.

5.       By letter dated July 16, 2005, Plaintiff re-contacted USPIS to inquire if Case number 0884-1379523-DMI(1) was closed. White Decl. at ¶8; Exhibit D, attached thereto.

6.       By letter dated July 18, 2005, USPIS acknowledged receipt of Plaintiff's request and informed him that his request was assigned FOIA No. 2005-FIS-00172. White Decl. at ¶9; Exhibit E, attached thereto.

7.       On July 18, 2005, USPIS sent an email to Inspector Richard Hall, as well as the operations coordinator for the San Francisco Division, to determine if Case number 0884-1379523-DMI(1) was still open. White Decl. at ¶10; Exhibit F, attached thereto.

8.       By electronic message, dated July 22, 2005, USPIS was advised that Case number 0884-1379523-DMI(1) was still under investigation and that any information provided at this time may jeopardize the investigation.  White Decl. at ¶11; Exhibit G, attached thereto.

9.       By letter dated August 1, 2005, USPIS sent Plaintiff a letter advising him an updated inquiry had been made concerning the status of the investigation and that Case number

2

0884-1379523-DMI(1) remained in an open status. White Decl. at ¶12; Exhibit H, attached thereto.

10.    On August 15, 2005, Plaintiff faxed a letter to Information Disclosure Technician ("IDT") L. Freeman requesting the name, address and phone or fax number of the contact in San Francisco regarding the case. White Decl. at ¶13; Exhibit I, attached thereto.

11.    As a result of plaintiff's August 15, 2005, fax, IDT L. Freeman sent Plaintiff another open investigation response letter. White Decl. at ¶14; Exhibit J, attached thereto.

12.    On September 5, 2005, plaintiff faxed USPIS with another letter stating his fax of August 15, 2005, may have been misinterpreted. Plaintiff reiterated that he wanted the name and address of the contact person in San Francisco assigned to the investigation. White Decl. at ¶15; Exhibit K, attached thereto.

13.    By letter dated September 9, 2005, Plaintiff was advised that since his request was not for agency records and that it was for the name and address of the contact person in San Francisco, USPIS was forwarding his request to Inspector Hall for attention and direct response. White Decl. at ¶16; Exhibit L, attached thereto.

14.    On November 20, 2005, Plaintiff faxed USPIS a letter inquiring as to the status of Case number 0884-1379523-DMI(1). White Decl. at ¶17; Exhibit M, attached thereto.

15.    By letter dated December 5, 2005, IDT M. R. Baxter advised Plaintiff that Case number 0884-1379523-DMI(1) was still in an open status. White Decl. at ¶18; Exhibit N, attached thereto.

16.    By letter dated December 31, 2005, Plaintiff wrote an appeal to the Chief Counsel, Consumer Protection & Privacy regarding the denial of release of files associated

with his request. White Decl. at ¶19; Exhibit O, attached thereto.

17.    By letter dated January 10, 2006, the USPS Law Department upheld the U.S.
Postal Inspection Service's decision denying Plaintiff's appeal for access to open Inspection
Service records. White Decl. at ¶20; Exhibit P, attached thereto.

18.    On July 17, 2006, USPIS received a copy of Mr. Phillip J. Kronzer's Privacy
Waiver and Certification of Identity, authorizing the USPS, FBI, DOJ or any other federal or
state agency involved to release any and all information relating to him to Mr. Jonathan Levy.
White Decl. at ¶21; Exhibit Q, attached thereto.

19.    On July 17, 2006, IDT M. Renee Baxter emailed a request to the Criminal
Investigations Service Center, Closed Cases, requesting a copy be made of Case No. 0884-
1379523-DMI(1) and mailed to USPIS. White Decl. at ¶22; Exhibit R, attached thereto.

20.    On July 24, 2006, all responsive documents were received by USPIS from the
Criminal Investigations Service Center, Closed Cases. Accordingly, Ms. White contacted
Inspector Derwey of the San Francisco Division to determine from where the responsive records
originated. On this same date, Inspector Derwey advised in an email that the majority of the
responsive records were provided to this agency by the Plaintiff. White Decl. at ¶23; Exhibit S,
attached thereto.

21.    By letter dated August 23, 2006, 566 pages of the responsive records forwarded
by Criminal Investigations Service Center, Closed Cases were sent by USPIS to Plaintiff. Of the
566 pages, 533 were released in full. The remaining 33 pages were released with redactions,
pursuant to (b)(2), (b)(5), (b)(7)(C), (b)(7)(E) and (b)(7)(F). 339 pages were withheld in their
entirety pursuant to (b)(2), (b)(3), (b)(5), (b)(7)(C), (b)(7)(D) and (b)(7)(F). An additional 7

4

pages were referred to the FBI for direct response to the plaintiff. White Decl. at ¶25; Exhibit T, attached thereto.

22.　　　On August 30, 2006, a letter was received from Plaintiff indicating his review of the 566 pages released in part or in full. Plaintiff indicated that he accepted the FOIA determinations regarding the partially redacted materials. Plaintiff sought further review of the 339 pages that were withheld in full. White Decl. ¶26, Exhibit U, attached thereto.

23.　　　By letter dated September 14, 2006, a response was sent to Plaintiff regarding a second review which was conducted of the 339 withheld pages. Upon completion of the second review, it was noted that 6 of the 339 pages were duplicates, thereby reducing the number to 333 pages being reviewed. Plaintiff was provided an additional 23 pages. Of the 23 pages, 21 pages were released in full. The remaining 2 pages were released with redactions pursuant to (b)(6) and (b)(7)(C). White Decl. ¶27, Exhibit V, attached thereto.

24.　　　On September 21, 2006, the USPIS received a copy of Plaintiff's September 19, 2006, correspondence with respect to further review and release of documents highlighted in the September 14, 2006, letter. White Decl. ¶28, Exhibit W, attached thereto.

25.    Plaintiff's September 19, 2006 letter, indicated that he accepted the

USPIS' non-disclosure of 29 pages that had undergone further review.  Plaintiff questioned the

further non-disclosure of the remaining 281 pages. The USPIS has now determined that

Documents 19 and 21, a total of 24 pages, should be released to Plaintiff.  Thus 257 pages of

withheld documents are the sole subject of this litigation.  White Decl. ¶29, Exhibit X, attached

thereto.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JONATHAN H. LEVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1007 (GK) |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and concerns the processing of Plaintiff's FOIA request made to the United States Postal Inspection Service ("USPIS"). Plaintiff's FOIA request sought all documents regarding anthrax hoax letters sent to Los Gatos and Campbell Police Departments, as well as an individual residence in San Jose, CA. See Compl. at ¶2.

The USPIS is a component of the United States Postal Service ("USPS"). The USPIS conducts criminal, civil and administrative investigations. Declaration of Betty White, Information Disclosure Specialist, FOIA Unit, Office of Counsel for the Postal Inspection Service, ("White Decl.") at ¶30. Ms. White's declaration explains the scope of the USPIS' respective search for records and the appropriateness of the exemptions applied. The USPIS released all non-exempt documents or portions thereof and made every effort to provide Plaintiff with all reasonably segregated portions of releasable material. The USPIS has complied with the requirement of FOIA, in responding to Plaintiff's request. Accordingly, Plaintiff's claims should be summarily dismissed or summary judgment granted in favor of Defendant.

## I. **STATEMENT OF FACTS**

Defendant incorporates herein as its Statement of Facts the Statement of Material Facts Not In Genuine Dispute.

## II. **ARGUMENT**

A.    **Standard for Summary Judgment**

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c); Alveska Pipeline Serv. Co. v. E.P.A.,856 F.2d 309, 313 (D.C. Cir. 1988) (conflict in declarations alone insufficient to preclude entry of summary judgment); Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The court exercises de novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures. 5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 755 (1989). In carrying its burden, agencies may rely on declarations of government officials which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith. Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); See Hayden v. National Security Agency, 608 F.2d 1318, 1387 (D.C. Cir. 1979). Once the Court determines that the declarations are sufficient, it need not inquire further. Students Against Genocide v. Department of State, 275 F.3d 828, 833 (D.C. Cir. 2001). Because Defendant has released all non-exempt responsive documents on claims challenged by Plaintiff, his Complaint should be summarily dismissed.

**B.    Defendant Has Submitted A Proper "Vaughn" Index**

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch, Inc. v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. F.C.C., 976 F.Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. I.R.S., 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Department of Justice, 844 F.2d 126, 129 (3rd Cir. 1988).[1]

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Com'n on Human Rights v. Food

---

[1] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Department of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

and Drug Admin., 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology of Washington, D.C., Inc. v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

In the case at bar, the USPIS has submitted a supporting declaration and a separate Vaughn index in support of this motion for summary judgment. The USPIS' declaration was prepared by Betty White, Information Disclosure Specialist, FOIA Unit, Office of Counsel for the Postal Inspection Service, an individual familiar with the handling of Plaintiff's direct request.

As set forth above, the declaration submitted in support of this motion meets the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974), and provides the Court with the requisite basis to grant Defendant's motion.

## C.      The USPIS Conducted A Reasonable Search for Records

The USPIS performed a reasonable search in response to Plaintiff's FOIA request.  In responding to a FOIA request an agency is under a duty to conduct no more than a reasonable search for responsive records. Ogelsby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1998); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F.Supp. 770, 776 (D.D.C. 1993).

The search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located. Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). It has been held that "the search need

4

only be reasonable; it does not have to exhaustive." Miller v. Department of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing, National Cable Television Association v. F.C.C., 479 F.2d 183, 186 (D.C. Cir. 1973). As a result, an agency under the FOIA is not required to search every division or field office in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. Department of Justice, 578 F.2d 261, 263 (9th Cir. 1978). The agency is not obligated to perform an "open-ended, broad based, and ill-defined" search of every division and office. See, Marrera v. Dept. of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985).

Even when a requested document indisputable exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. Nation Magazine, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Maynard v. C.I.A., 982 F.2d 546, (1st Cir. 1993). Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." Truitt v. Department of State, 879 F.2d 540, 542 (D.C. Cir. 1990).

The United States Postal Inspection Service conducts criminal, civil, and administrative investigations. White Decl. ¶30. Plaintiff's FOIA request sought all documents regarding anthrax hoax letters sent to Los Gatos and Campbell Police Departments, as well as an individual residence in San Jose, CA. See Compl. at ¶2.

Upon receipt of Plaintiff's request regarding investigative records, USPIS searched their Inspection Service Integrated Information System (ISIIS). White Decl. ¶32. The ISIIS contains additional or summary duplicative case files and other information in support of investigations by USPIS. Investigative files may contain investigative reports, notes, memoranda, background data

5

including arrest records, statement of informants and witnesses, laboratory reports of evidence analysis, search warrants, summons and subpoenas, and other information related to the investigation. Id. at ¶30. After searching ISIIS, it was revealed that Plaintiff's request pertained to an open and active investigation in the San Francisico Division, Case number 0884-1379523-DMI(1). Because there was an ongoing open investigation, responsive records were not immediately retrievable. Id. at ¶33.

USPIS was advised that Case number 0884-1379523-DMI(1) was closed in July 2006. Id. at ¶34. Responsive records on closed cases are located in the Criminal Investigations Service Center (CISC) or the Security Investigations Service Center (SISC) until transferred to a Federal Records Center. Id. CISC, Closed Cases, located responsive records and forwarded them to USPIS for review and final dissemination to Plaintiff in response to his FOIA request. Id. As a result of this search 912 pages of responsive records were forwarded to USPIS for FOIA processing. Id.

By letter dated August 23, 2006, 566 pages of the responsive records forwarded by Criminal Investigations Service Center, Closed Cases were sent by USPIS to Plaintiff. Of the 566 pages, 533 were released in full. The remaining 33 pages were released with redactions, pursuant to (b)(2), (b)(5), (b)(7)(C), (b)(7)(E) and (b)(7)(F). Id. at ¶25. 339 pages were withheld in their entirety pursuant to (b)(2), (b)(3), (b)(5), (b)(7)(C), (b)(7)(D) and (b)(7)(F). An additional 7 pages were referred to the FBI for direct response to the plaintiff[2]. Id.

Upon completion of a second review of the 339 pages withheld in full, it was noted that 6

---

[2] Defendant will provide a supplemental response with regard to the documents released to the FBI.

of the 339 pages were duplicates, thereby reducing the number to 333 pages being reviewed.

Plaintiff was provided an additional 23 pages. Of the 23 pages, 21 pages were released in full.

The remaining 2 pages were released with redactions pursuant to (b)(6) and (b)(7)(C). Id. at ¶27.

Plaintiff's September 19, 2006 letter indicated that he accepted the USPIS' non-

disclosure of 29 pages that had undergone further review. Plaintiff questioned the further non-

disclosure of the remaining 281 pages. The USPIS has now determined that Documents 19 and

21, a total of 24 pages, should be released to Plaintiff. Id. at ¶29, Exhibit X, attached thereto.

Thus, 257 pages of withheld documents are the sole subject of this litigation.

**D.**     **The United States Postal Inspection Service Properly Withheld Certain Records Under FOIA**

    **1.**     **Documents Were Properly Withheld Pursuant to FOIA Exemption b(2)**

Pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), the Government is not required to

disclose records "related solely to the internal personnel rules and practices of an agency." 5

U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal

agency matters so routine or trivial that they could not be "subject to … a genuine and

significant public interest" and (2) internal agency matters of some public interest "where

disclosure may risk circumvention" of statutes or agency regulations.  Dept. of Air Force v.

Rose, 425 U.S. 352, 369-70 (1976); Schiller v. National Labor Relations Board, 964 F.2d

1205, 1207 (D.C. Cir. 1992); National Treasury Employees Union v. U.S. Customs Service,

802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and

Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); Truesdale v. U.S. Dept. of Justice,

No.Civ.A. 03-1332GK, 2005 WL 3294004, *4 - 5 (D.D.C. Dec. 5, 2005); Gonzales, 2005

WL 3201009, *6; Dorsett v. U.S. Dept. of Treasury, 307 F.Supp.2d 28, 35-36 (D.D.C.

2004); Edmonds v. F.B.I., 272 F.Supp.2d 35, 50 (D.D.C. 2003).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data

processing notations, brief references to previous communications, and other like administrative

markings are exempt from disclosure. Coleman v. F.B.I., 13 F.Supp.2d 75, 78-79 (D.D.C. 1998),

citing, Lesar v. Dept. of Justice, 636 F.2d 472 (D.C. Cir. 1980); see also Schiller, 964 F.2d at

1208 (protecting from disclosure internal agency time deadlines and procedures, recordkeeping

directions, instructions on which agency official to contact for assistance, and guidelines on

clearance procedures); Nix v. United States, 572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover

letters of merely internal significance); Scherer v. Kelley, 584 F.2d 170, 175-78 (7th Cir.

1978)(protecting "file numbers, initials, signature and mail routing stamps, references to

interagency transfers, and data processing references"); Voinche, 46 F.Supp.2d at 30 (protecting

the file number for an informant and telephone extension of the Public Corruption Unit of the

FBI's Criminal Investigation Unit); Wilson v. Dep't of Justice, No. 87-2415-LFO, 1991 WL

111457, at *2 (D.D.C. June 13, 1991)(protecting transmittal slips from low level officials). The

notion behind this reasoning is that administrative agencies should not be burdened by

responding to requests for trivial information unlikely to be the subject of public interest.

Martin, 686 F.2d at 34.

In this case, seven documents have been withheld pursuant to FOIA exemption b(2).

Document numbers 1, 2, 3 and 6 are purely administrative in nature and were generated

internally for the sole use by the USPIS.[3] Exemption 2 was asserted to protect the nondisclosure

of mundane administrative data which applies to information concerning routine, internal matters

of no interest to the general public. Documents 10, 13 and 15 consist of internal e-mails between

agency personnel and law enforcement in connection with day to day operations.[4] Document

numbers 10, 13 and 15 were withheld pursuant to Exemption b(2) because the disclosure of the

records in question would impede the effectiveness of the Postal Inspection Service in

responding to civil actions in connection with the law enforcement activities of the agency.

Because The USPIS properly applied exemption b(2) to the aforementioned Documents,

Plaintiff's request for such records should be denied.

### 2.    Documents Were Properly Withheld Pursuant to FOIA Exemption b(5)

Title 5, United States Code,  § 552 (b)(5) (hereinafter Exemption b(5)) protects

"inter-agency or intra-agency memorandums or letters which would not be available by law to a

party   . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  In other words, this exemption

protects documents normally privileged in the civil discovery context.  United States v. Weber

Aircraft Corp., 465 U.S. 792, 799 (1984) ("exemption 5 simply incorporates civil discovery

privileges"); FTC v. Grolier Inc., 462 U.S. 19, 26 (1983); NLRB v. Sears, Roebuck & Co., 421

U.S. 132, 149 (1975).  This section of the FOIA  incorporates, *inter alia*, the executive

"deliberative process privilege that protects candid internal discussions of legal or policy

---

[3] Document 3 is also being withheld pursuant to Exemption (b)(7)(D). Document 6 is also being withheld pursuant to Exemption (b)(5).

[4] Document 10 is also being withheld pursuant to Exemption (b)(5). Document 13 is also being withheld pursuant to Exemptions (b)(5) and (b)(7)(C). Document 15 is also being withheld pursuant to Exemptions (b)(5), (b)(7)(C) and (b)(7)(D).

matters." <u>Maricopa Audubon Soc'y v. United States Forest Serv.</u>, 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

"The deliberative process privilege, also known as the 'executive' or 'governmental' privilege serves many purposes." <u>Eugene Burger Management Corp. v. U.S. Dept. of Housing and Urban Development</u>, 192 F.R.D. 1, 4 (D.D.C. 1999). The main purpose of this privilege "which is well established in the law, is...to 'prevent injury to the quality of agency decisions.'" <u>Cofield, et al. v. City of LaGrange, Georgia</u>, 913 F.Supp. 608, 615 (D.D.C. 1996) (<u>quoting</u> <u>NLRB v. Sears Roebuck & Co.</u>, 421 U.S. 132, 151 (1975)). The deliberative process privilege prevents harm to the quality of agency decisions by shielding the opinions, conclusions, and reasoning used in the administrative and decision making process of the Government. <u>See</u> <u>United States v. Morgan</u>, 313 U.S. 40, 422 (1941); <u>Petroleum Info Corp. v. Dept. of the Interior</u>, 976 F.2d 1429, 1434 (D.C. Cir. 1992); <u>Access Reports v. Dept. of Justice</u>, 926 F.2d 1192, 1194-1195 (D.C. Cir. 1991); <u>United States v. Farley</u>, 11 F.3d 1385, 1389 (7th Cir. 1993).

The privilege is designed to encourage frank and uninhibited communication among government officials in the course of creating public policy. <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 149-151 (1975); <u>Petroleum Info Corp.</u>, 976 F.2d at 1434; <u>Access Reports</u>, 926 F.2d at 1194-1195; <u>Farley</u>, 11 F.3d at 1389. The deliberative process privilege remains even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice." <u>Federal Open Market Committee v. Merrill</u>, 443 U.S. 340, 360 (1979).

Since "Exemption 5 'was intended to protect not simply the deliberative material, but also the deliberative process of agencies,'" <u>National Wildlife Federation v. U.S. Forest Service</u>, 861 F.2d 1114, 1118 (9th Cir. 1988) (<u>quoting</u> <u>Montrose Chemical Corp. of California v. Train</u>, 491

F.2d 63, 71 (D.C. Cir. 1974)), the courts have found that even factual materials are encompassed within the privilege, if release of such materials would harm the overall deliberative process.

For a document to be covered by the deliberative process privilege, two requirements must be satisfied. First, it must be predecisional, i.e., "antecedent to the adoption of agency policy." Jordan v. U.S. Dept. of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc). In determining whether a document is predecisional, the Supreme Court has held that an agency need not identify a specific decision in connection with which a document is prepared. NLRB v. Sears, Roebuck & Co., 421 U.S. at 151 n.18. The Court recognized that agency deliberations do not always ripen into agency decisions, and that ultimately the privilege is meant to protect the decisional process, rather than any particular document or decision. Id.; see also Dudman Communications Corp. v. Dept. of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes -- not to protect specific materials."). It is sufficient for the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States Gas Corp. v. Dept. of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).

Second, the document must be deliberative in nature, i.e., it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975). Deliberative documents frequently consist of "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. at 150. Thus, the exemption covers recommendations, draft documents, proposals, analyses, suggestions, discussions, and other subjective documents that

11

reflect the give-and-take of the consultative process.  Coastal States, 617 F.2d at 866.

Disclosure of material containing such deliberations or of material on which such deliberations are based would prejudice the free flow of internal recommendations and other necessary exchanges.  It would severely hamper the ability of responsible officials to formulate and carry out executive branch programs.

Here, seven documents have been withheld in their entirety pursuant to Exemption b(5). Documents 4 and 5 consist of a memorandum and report that were generated during the course of the criminal investigation by the USPIS and local state authorities connected to the anthrax hoax letters.  Documents 6, 8, 10, 13 and 15 consist of internals e-mails; correspondence with third parties and investigator notes and reports.[5]  These predecisional Documents are withheld because they are not final reports or recommendations, and are in fact antecedent to any final agency decision.  Exemption 5 was asserted to protect these deliberative documents that include thoughts and opinions of agency personnel.  Because USPS properly applied exemption b(5) to the aforementioned Documents, Plaintiff's request for such records should be denied.

**3.    Documents Were Properly Withheld Pursuant to FOIA Exemption 7(C)**

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.

---

[5] Document 8 is also being withheld pursuant to Exemption (b)(7)(C).

12

Reporters Comm. for Freedom of the Press v. United States Dep't of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C). Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed elsewhere does not diminish their privacy interests. Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dep't of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Here, fourteen documents are withheld in full pursuant to Exemption 7(C). Documents 7, 8, 9, 11, 12, 13, 15, 16, 18, 20, 22, 23, 24 and 25 contain third party information that was used in

connection with the criminal investigation into the anthrax hoax letters.[6] The third parties

protected from disclosure in these documents include individuals that provided witness

statements, individuals who supplied information or otherwise assisted in the investigation,

individuals mentioned in the records as being potential leads, and non-postal law enforcement

personnel, whether federal, state or local, who played some official role in the investigation and

are identified in the records. The threshold of Exemption 7(C) was met because the documents

at issue were compiled for law enforcement purposes and contain the identities of individuals

who were not the target of the criminal investigation.

Documents 12, 13, 15, 16, 20, 22, 23, 24 and 25 contain information that could result in

the disclosure of the identities of third parties who were not the targets of the investigation. Such

disclosure could reasonably be expected to result in subjecting them to unnecessary harassment,

intimidation and/or physical harm. Exemption 7(C) has been applied to these documents because

the names and information provided might reveal their identity. Document 12 was compiled by

the investigator in the criminal case and Exemption 7(C) has been applied to this document

because the names, addresses, phone numbers and comments column of the inspector would

reveal the third party identities. The exemption was applied because the disclosure of the

identities of the third parties could reasonably be expected to result in subjecting them to

unnecessary harassment, intimidation and/or physical harm. Because USPIS properly applied

exemption b(7)(C) to the aforementioned Documents, Plaintiff's request for such records should

be denied.

---

[6] Document 9 is also being withheld pursuant to Exemption (b)(7)(D). Document 16 is also being withheld pursuant to (b)(7)(D) and (b)(7)(F). Documents 18, 20, 22, 23, 24 and 25 are also being withheld pursuant to (b)(7)(D).

**4.    Documents Were Properly Withheld Pursuant to FOIA Exemption (b)7(D)**

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information

compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local, or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a
> criminal investigation or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the

Government's channels of confidential information."  Birch v. United States Postal Serv., 803

F.2d 1206, 1212 (D.C. Cir. 1986).[7]

When invoking Exemption 7(D), the agency must demonstrate that the information was

compiled for a law enforcement purpose, that an informant provided the information under either

an express or an implied promise of confidentiality and, under the first clause of 7(D), that

disclosure could reasonably be expected to disclose the source's identity.  United States Dep't of

Justice v. Landano, 508 U.S. 165, 171-72 (1993).  If an individual has not been given an express

promise of confidentiality, the agency may demonstrate that a source has been given an implied

promise of confidentiality based upon the circumstances of the case.  Landano, 508 U.S. at 179-

---

[7]  The term "confidential source" is very broad.  See, e.g., Gula v. Meese, 699 F. Supp.
956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F. Supp.
705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the
information was provided in confidence or in trust, with the assurance that it would not be
disclosed to others.  Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir.
1990).  As such, "the question is not whether the requested document is of the type that the
agency usually treats as confidential, but whether the particular source spoke with an
understanding that the communication would remain confidential."  United States Dep't of
Justice v. Landano, 508 U.S. 165, 172 (1993).

80. The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred." Id. at 179. However, once an agency establishes an express or implied promise of confidentiality, it is extremely difficult to overcome. In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'" Parker v. Department of Justice, 934 F.2d at 378, quoting Dow Jones & Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).

The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists: "the nature of the crime investigated and the witness' relation to it." Id. at 181. In applying these factors, a key consideration is the potential for retaliation against the source. Id. at 179-180; see also, Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); Hale v. Dept. of Justice, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well. The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity. Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983); see also Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dept. of Justice, 790 F. Supp.

16

17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity"). The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests. Parker v. Department of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure"). Therefore, "once the agency receives information from a "'confidential source" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'" Parker, 934 F.2d at 380 (editing by the court, quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)). Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, Ortiz v. HHS, 70 F.3d 729, 733 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996), and after the death of the source. Campbell v. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

In this case, twelve documents are withheld in full pursuant to Exemption 7(D). Documents 3, 9, 14, 15, 16, 17, 18, 20, 22, 23, 24 and 25 are being withheld since release could reasonably be expected to disclose the identity of a confidential source. The threshold for Exemption 7(D) was met because the withheld documents consist of the identities of confidential sources and the information they provided in the course of the investigation into the anthrax hoax

letters sent to the Los Gatos, CA and Campbell, CA police departments and a private residence in

San Jose, CA in May 2003. Revelation of these confidential sources could jeopardize future law

enforcement cases and disclosure of the identity of these sources could reasonably be expected to

result in subjecting them to unnecessary harassment, intimidation and or physical harm.

This portion of the exemption recognizes the reality that the identity of a source may

often be determined by analyzing the information provided, a task often easily accomplished by

someone familiar with the facts and circumstances of the case. Should this occur, the Inspection

Service's ability to continue to obtain confidential information concerning suspected criminal

activity would be impaired, and sources of information vital to its investigative and law

enforcement functions would be imperiled. Because USPIS properly applied exemption b(7)(D)

to the aforementioned Documents, Plaintiff's request for such records should be denied.


**5.      Documents Were Properly Withheld Pursuant to FOIA Exemption 7(F)**

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter Exemption 7(F)) protects

from mandatory disclosure information compiled for law enforcement purposes if disclosure

would reasonably be expected to endanger the life or physical safety of any individual, 5 U.S.C. §

552 (b)(7)(F). Courts have consistently upheld the application of this exemption to protect

information identifying law enforcement officers, and special agents who are especially likely to

be in contact with violent suspects. Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977);

Albuquerque Pub. Co., 726 F. Supp. 851, 858 (D.D.C. 1989); Docal v. Bennsinger, 543 F. Supp.

38, 48 (M.D.Pa. 1981); Nunez v. Drug Enforcement Administration, U.S. Dept. of Justice, 497 F.

Supp. 209, 212 (S.D.N.Y. 1980). Although this Exemption applies to information that is also

subject to the protection of Exemption 7(C), supra, there is no balancing required with the use of Exemption 7(F) and it is difficult to imagine any public interest that could outweigh the safety of an individual.

Here, one document has been withheld pursuant to Exemption 7(F).  Document 16 consists of four interviews and one witness statement and that information relates to confidential sources, including victims, involved in the investigation surrounding the anthrax hoax letters.  In addition to causing unwarranted invasion of their personal privacy, releasing the records described here could seriously jeopardize the safety of these individuals by subjecting them to an increased risk of bodily harm or death.  Because USPIS properly applied exemption b(7)(F) to the aforementioned Documents, Plaintiff's request for such records should be denied.

E.    **The USPIS Properly Evaluated Documents for Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u> <u>sponte</u>." <u>Trans-Pacific Policing Agreement v. United States Customs Service</u>, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." <u>Mead Data</u>, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification"

19

that the exempt material would effectively be disclosed. Id. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." Mead Data, 566 F.2d at 261, n.55.

The USPIS has examined responsive records to determine if any nonexempt segregable

information could be released. The nature of the records does not allow disclosure without

effectively disclosing exempt material. When a document was withheld in its entirety, it was

determined that the document was non-segregable—that no meaningful portions could

reasonably be released without destroying the integrity of such document as a whole and

revealing information protected by other exemptions. In this case, the United States Postal

Inspection Service has demonstrated with reasonable specificity that all reasonably segregable

information has been released. See White Decl ¶40.

20

## CONCLUSION

Defendant has demonstrated that the United States Postal Inspection Service properly processed the documents responsive to Plaintiff's FOIA request, and that no information from these documents was improperly withheld. Accordingly, the Court should grant Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____
WYNEVA JOHNSON, D.C. Bar #278515
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530

21