**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JONATHAN H. LEVY,** Plaintiff, | |
| v. | **Civil Action No. 06-1007 (GK)** |
| **UNITED STATES POSTAL SERVICE,** Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Jonathan H. Levy, proceeding pro se, brings this action against Defendant, the United States Postal Service ("USPS"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In his FOIA request, Plaintiff seeks all documents in the possession of Defendant concerning anthrax hoax letters sent in May 2003 to the Los Gatos and Campbell, California police departments, as well as to a private residence in San Jose, California. This matter is before the Court on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment [**Dkt. No. 9**]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, Defendant's Motion to Dismiss for Summary Judgment is **granted** as to those documents withheld pursuant to Exemption 7(C) and Exemption 7(F) and **denied** as to those documents withheld pursuant to Exemption 5 and Exemption 7(D).

## I. BACKGROUND[1]

On March 10, 2005 Plaintiff submitted a FOIA request to Defendant seeking all documents and information concerning anthrax hoax letters sent to the Los Gatos and Campbell, California police departments and to a private residence in San Jose, California in May 2003. The requested information related to the role allegedly played by Plaintiff's client, Philip J. Kronzer, in the sending of the hoax letters.

An internal USPS inquiry determined that the United States Postal Inspection Service ("USPIS"), through its San Francisco Division, was at that time conducting an investigation concerning the anthrax hoax letters.[2] On March 30, 2005, USPS informed Plaintiff that his FOIA request was related to an open investigation and that the material requested was being withheld pursuant to FOIA's Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), which exempts information related to an ongoing law enforcement investigation from disclosure under FOIA. The USPS asked Plaintiff to contact the agency again in sixty to ninety days to determine if the investigation had subsequently been closed.

On July 16, 2005 Plaintiff contacted USPS to inquire about the

---

[1] Unless otherwise noted, the facts set forth herein are undisputed and drawn from Defendant's Statement of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h).

[2] The United States Postal Inspection Service is the law enforcement arm of the United States Postal Service.

status of the investigation. On August 1, 2005, Plaintiff was informed that the investigation remained open. Plaintiff again contacted USPS on November 20, 2005, and on December 5, 2005, USPS informed him that the investigation remained open.

On December 31, 2005, Plaintiff appealed the agency's refusal to produce relevant documents to the USPS Chief Counsel, Consumer Protection & Privacy. By a letter dated January 10, 2006, the USPS Law Department upheld the USPS's decision to withhold documents pursuant to Exemption 7(A). On May 30, 2006, Plaintiff then filed suit in this Court.

At some point, the investigation was closed and 566 pages of responsive records were then produced to Plaintiff on August 23, 2006, including thirty-three pages that were released with redactions. An additional 339 pages responsive to Plaintiff's FOIA request were withheld under various FOIA exemptions.

On September 14, 2006, USPS completed a second review of the 339 pages of withheld documents. Six pages were found to be duplicates and Plaintiff was provided with an additional twenty-three pages.

On September 19, 2006, Plaintiff sent a letter to USPS stating that he accepted its decision not to disclose twenty-nine of the remaining pages, and prior to filing its Motion to Dismiss or in the Alternative for Summary Judgment, USPS produced twenty-four pages of additional documents. Thus, when USPS filed the instant

Motion, only 257 pages were subject to dispute between the parties. During briefing of this Motion, Defendant released an additional 21 pages of material to Plaintiff.

Furthermore, in the course of briefing this Motion, the parties have further narrowed the records at issue to what they jointly refer to as Documents 7, 8, 9, 11, 15, 16, 17, 18, 20, and 22-25.

**II. STANDARD OF REVIEW**

FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." Oglesby v. Dep't of the Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. §§ 552(a), (b)). An agency that withholds information pursuant to a FOIA exemption bears the burden of justifying its decision, Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and must submit an index of all materials withheld. Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973).

In determining whether an agency has properly withheld requested documents under a FOIA exemption, the district court conducts a de novo review of the agency's decision. 5 U.S.C. § 552(a)(4)(B).

In a FOIA case, the court may award summary judgment solely on the basis of information provided in affidavits or declarations

when they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

## III. ANALYSIS

### A. Exemption 5

USPS claims that portions of Documents 8 and 15 may be withheld pursuant to FOIA's Exemption 5, 5 U.S.C. § 552(b)(5), which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party...in litigation with the agency." Exemption 5 therefore incorporates the evidentiary privileges applicable to civil litigation into the FOIA context. United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984). Congress enacted Exemption 5 to protect the efficiency of government decision making: "'efficiency of Government would be greatly hampered if, with respect to legal and policy makers, all Government agencies were prematurely forced to 'operate in a fishbowl.''" Petroleum Info. Corp., 976 F.2d at 1434 (quoting S. Rep. No. 89-813, at 9 (1965)). Nevertheless, Exemption 5 is to be construed "as narrowly as consistent with efficient Government operation." Id. (internal quotation marks omitted).

In particular, USPS argues that the deliberative process privilege applies to these documents. The privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Petroleum Info. Corp., 976 F.2d at 1433 (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)) (internal quotation marks omitted). The "ultimate purpose" of the privilege is to "prevent injury to the quality of agency decisions." Sears, 421 U.S. at 151.

To qualify for the privilege, information must be both "predicisional" and "deliberative." Petroleum Info. Corp., 976 F.2d at 1434. "A document is predicisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." Id. (quoting Renegotiation Bd. v. Grumman Aircraft, 421 U.S. 168, 184 (1975)).

A document is deliberative if it "'reflects the give-and-take of the consultative process.'" Id. (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)). Materials tend to be deliberative in nature if their disclosure "would tend to 'discourage candid discussion within an agency.'" Id. (quoting Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991)). Information concerning an interactive process between an agency and an outside third party is not

deliberative in nature, because such information is no longer secret and cannot advance the policy objectives that Exemption 5 is intended to serve. Mead Data Cent., Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 257-58 (D.C. Cir. 1977) (documents concerning commercial negotiations between agency and outside publishing company not subject to Exemption 5).

USPS claims that the following withheld documents are subject to Exemption 5: a one page letter from a USPIS inspector to a third party "regarding the assistance provided in the matter involving Plaintiff" (Document 8), Decl. of Betty White at 14, and two "external memoranda." Supp. Decl. of Betty White ¶ 8. USPS has not provided any explanation concerning how these documents qualify as either "predicisional" or "deliberative" under the governing case law. The documents consist of correspondence with an outside party and "external memoranda" that have either been disclosed to individuals outside the agency or were created by third parties and provided to the agency, and therefore do not fall within the ambit of the deliberative process privilege. See Mead Data Cent., 566 F.2d at 257. Moreover, it is decidedly unclear how such documents reflect USPS' internal decision-making process, given the agency's failure to provide anything beyond the most conclusory explanation for its withholding of these documents. Accordingly, Defendant's Motion is **denied** as to those portions of Documents 8 and 15 withheld pursuant to Exemption 5.

**B. Exemption 7(C)**

USPS contends that a substantial portion of the withheld documents[3] are protected from disclosure by Exemption 7(C), which protects information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C).

In determining whether Exemption 7(C) applies, the Court must balance the public interest in disclosure with the privacy interests implicated by release of the material. Computer Prof'ls for Soc. Responsibility v. United States Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Suspects, witnesses, and investigators all have substantial privacy interests that are implicated by the public release of law enforcement investigative materials. Id. Disclosure of these materials can lead to great embarrassment and reputational harm for these individuals. Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991).

On the other side of the ledger, it "is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting United

[3] These include all or portions of Documents 7, 8, 9, 11, 15, 16, 18, 22, 23, 24, and 25.

States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989)) (internal quotation marks omitted). Thus, the requested information must shed light on the agency's own conduct and not merely on the subject matter of the underlying law enforcement investigation. Id. Indeed, the Court of Appeals has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." Safecard, 926 F.2d at 1206.

USPS claims that a substantial portion of the withheld documents are exempt from disclosure pursuant to Exemption 7(C). The documents include witness statements, information provided by individuals that assisted the investigation, and documents identifying certain individuals as potential leads in the investigation. The withheld documents also name a number of law enforcement agents, from both the USPIS and other federal, state, and local law enforcement agencies. Release of this information to the public therefore implicates the substantial privacy interests of witnesses, potential suspects, and law enforcement agents. Thus, there are strong privacy interests at stake concerning the disclosure of this material. See Computer Prof'ls, 72 F.3d at 904.

There is no countervailing public interest in the disclosure

of this material. Plaintiff does not claim to seek these materials for the purpose of obtaining more information about the agency's own conduct and has made no allegations of agency impropriety that would weigh in favor of disclosure. See Safecard, 926 F.2d at 1206.

Thus, after balancing the strong privacy interests implicated by these documents against the lack of a public interest in their disclosure, the Court concludes that USPS properly withheld these documents under Exemption 7(C). Accordingly, Defendant's Motion is **granted** as to those portions of Documents 7, 8, 9, 11, 15, 16, 18, 22, 23, 24, and 25 withheld pursuant to Exemption 7(C).[4]

**C. Exemption 7(D)**

USPS also claims that many of the withheld documents[5] are protected by Exemption 7(D), which exempts from disclosure information that

---

[4] Defendant argues that a small subset of pages within Document 15 are also protected pursuant to Exemption 2 and Exemption 6. See Supp. Decl. of Betty White, ¶ 8 ("emails prepared and circulated within the Inspection Service for use by Inspection Service employees" withheld pursuant to Exemptions 2 and 7(C), a "two-page email from a third party individual regarding the 'continued harassment from Kronzer'" withheld pursuant to, inter alia, Exemptions 2 and 7(C), a "document with personal identifying information of third parties" withheld pursuant to Exemptions 6 and 7(C), and "email from outside law enforcement personnel" withheld pursuant to Exemptions 2 and 7(C)). Because the Court concludes that these pages were all properly withheld pursuant to Exemption 7(C), there is no need to address these additional arguments.

[5] These include all or portions of Documents 8, 9, 11, 15, 16, 17, 18, 22, 23, 24, and 25.

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

To invoke Exemption 7(D), an agency must show either that a source provided the information to the agency under express assurances of confidentiality or that the circumstances support an inference of confidentiality. United States Dep't of Justice v. Landano, 508 U.S. 165, 179-81 (1993). When determining the existence of an implied assurance of confidentiality, the government is not entitled to a presumption that all sources supplying information in the course of a criminal investigation are confidential sources. Id. at 181. Such an assurance can be inferred, however, by the nature of the criminal investigation and the informant's relationship to it. Id. "A source should be deemed confidential if the source furnished information with the understanding that [the law enforcement agency] would not divulge the communication except to the extent...necessary for law enforcement purposes." Id. at 174.

The Defendant does not assert that any of these documents were withheld pursuant to an express assurance of confidentiality. Nor has the agency met its burden to show that the information

requested was sought by the agency as a result of an implied assurance of confidentiality. The Defendant's descriptions of the documents withheld pursuant to Exemption 7(D) are so conclusory that it is impossible for the Court to determine if they were obtained subject to an implied grant of confidentiality. For example, Document 17 is merely described in the Defendant's supporting declaration as "[f]orty-one (41) pages of materials provided by an outside law enforcement agency." Decl. of Betty White at 22. There is no basis, from this cursory description, for the Court to find that these materials were provided as a result of an implied assurance of confidentiality. Defendant's descriptions of the other documents are similarly conclusory. See id. at 20-24.

Accordingly, Defendant's Motion is **denied** as to those portions of Documents 8, 9, 11, 15, 16, 17, 18, 22, 23, 24, and 25 withheld pursuant to Exemption 7(D).[6]

**D. Exemption 7(F)**

Defendant seeks to exclude one interview memorandum[7] pursuant to Exemption 7(F), which protects from disclosure information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). This

[6] Many of these same documents, but not all, were properly withheld pursuant to Exemption 7(C). See III. B. supra.

[7] This memorandum is one component of Document 16, which consists of five separate records, the remainder of which are protected from disclosure by Exemption 7(C), as discussed above.

exemption may be invoked "to protect any individual reasonably at risk of harm." Miller v. United States Dep't of Justice, ___ F. Supp. 2d ___, 2008 WL 2544659, at *27 (D.D.C. June 24, 2008) (internal quotation marks omitted). Unlike Exemption 7(C), Exemption 7(F) does not require a balancing test. Shores v. FBI, 185 F. Supp. 2d 77, 85 (D.D.C. 2002). Exemption 7(F) applies only upon a determination that "there is some nexus between disclosure and possible harm." Miller, 2008 WL 2544659, at *27 "Within limits, the Court defers to the agency's assessment of danger." Id.

The interview memorandum in question was generated in the course of investigating the source of the anthrax hoax letters. It relates to information provided by confidential sources, including victims. Supp. Decl. of Betty White ¶ 10. The agency contends that release of this memorandum could subject these individuals "to an increased risk of bodily harm or death." Decl. of Betty White at 24. Although the source of this danger is not specified, it is reasonably conceivable that the release of information given by victims of a hoax involving the deadly anthrax toxin could result in bodily harm or death for those individuals. The Court will therefore defer to the agency's assessment of danger. Accordingly, Defendant's Motion is **granted** as to that portion of Document 16 withheld pursuant to Exemption 7(F).

**E. Segregability**

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. Trans-Pac. Policing Agreement v. United States Customs Serv., 177 F.3d 1022, 1026-27 (D.C. Cir. 1999); 5 U.S.C. § 552(b). The district court has an affirmative duty to consider the issue of segregability sua sponte and the failure to make express findings on segregability constitutes reversible error. Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007).

Having reviewed the agency's declaration and supplemental declaration submitted in support of its Motion, the Court concludes that the USPS has withheld only the records or portions of records exempt under FOIA's provisions, and that all reasonably segregable material has been released. See Decl. of Betty White at 24-25; Supp. Decl. of Betty White ¶ 16. With respect to these records, the agency's declaration and supplemental declaration adequately specify "in detail which portions of the document[s] are disclosable and which are allegedly exempt." Vaughn, 484 F.2d at 827.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **granted** as to those documents withheld pursuant to Exemption 7(C) and Exemption 7(F) and **denied** as to those documents withheld pursuant to Exemption 5 and Exemption 7(D). An Order shall accompany this Memorandum Opinion.

/s/
July 25, 2008 Gladys Kessler
United States District Judge

**Copies to: Attorneys of record via ECF**